IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

------------------------------------------------------------X
:
PHILIP PAPE                                                  :         3:13 CV 63 (JGM)
:
V.                                                           :
:
LAW OFFICES OF FRANK N. PELUSO, P.C.                         :         DATE: JANUARY 5, 2016
:
------------------------------------------------------------X

RULING ON PLAINTIFF'S SECOND MOTION IN LIMINE
CONSTRUED AS A MOTION FOR RECONSIDERATION IN LIGHT OF NEW EVIDENCE

On October 7, 2015, this Magistrate Judge filed her Ruling on Plaintiff's Motions In Limine (Dkt. #80)["October 2015 Ruling"], familiarity with which is presumed.  As set forth in that ruling, on January 14, 2013, plaintiff Philip Pape filed this lawsuit under the Fair Debt Collection Practices Act ["FDCPA"], 15 U.S.C. § 1692, the Connecticut Creditor's Collection Practices Act, CONN. GEN. STAT. § 36a-648, and the Connecticut Unfair Trade Practices Act, CONN. GEN. STAT. § 42-110g, with respect to a home improvement loan purchased by defendant Amos Financial LLC ["defendant Amos"], for which defendant Law Offices of Frank N. Peluso, P.C. ["defendant Peluso Law Offices"] sent a collection letter on defendant Amos' behalf on July 31, 2012 ["July 2012 Letter"].  (Dkt. #1).  Defendants filed their Answer and Special Defenses on March 20 and 25, 2013.  (Dkts. ##7-8, 11).

On September 5, 2013, plaintiff filed his Motion for Summary Judgment (Dkt. #33), followed by defendants' Motion for Summary Judgment, filed November 27, 2013.  (Dkt. #48).  On March 4, 2014, Senior U.S. District Judge Alfred V. Covello filed his Ruling on the Parties' Cross-Motions for Summary Judgment (Dkt. #51)["March 2014 Ruling"], denying both motions. After a review of the undisputed facts (at 2-4) as well as summarizing the legal arguments presented by both parties (at 6-9), Judge Covello held as follows:

> [T]he court concludes that there exists a genuine issue of material fact as to the nature of the loan. Real estate investors are entitled to personal homes, and if the loan is a consumer loan in nature, . . . plaintiff <u>may</u> be entitled to relief. However, if the loan is commercial in nature, . . . plaintiff's 27 Alden loan is not afforded the FDCPA's protection to personal borrowers. The same issue of material fact exists with the Connecticut statute causes of action.

(At 10)(emphasis added)(footnote omitted). On July 30, 2014, a Stipulation of Dismissal was entered with respect to defendant Amos only. (Dkts. ##53-55). On August 21, 2014, the parties consented to trial before a U.S. Magistrate Judge (Dkt. #62), and on July 2, 2015, the case was referred to this Magistrate Judge. (Dkt. #68).

Plaintiff filed two motions <u>in limine</u>. First, on July 20, 2015, plaintiff filed his Pretrial Motion re Initial Disclosures. (Dkt. #70). Second, on July 31, 2015, plaintiff filed his Motion <u>In Limine</u> to Limit Trial to Statutory Damages or for Other Relief, with brief in support (Dkt. #73),[1] as to which defendant Peluso Law Offices filed its brief in opposition on August 20, 2015. (Dkt. #75). In this second motion, plaintiff requested that the Court find defendant Peluso Law Offices liable for statutory damages, so that the trial would be restricted to the amount of statutory damages up to $1,000, or alternatively, the Court award the $1,000 statutory damages "based on the egregious nature of [d]efendant's collection letter, leaving only fees and costs to be determined." (Dkt. #73, at 2 & Brief at 11-12). In the October 2015 Ruling, plaintiff's Pretrial Motion re Initial Disclosures was granted in part, without prejudice to renewal at a later time regarding appropriate sanctions. (<u>Id.</u> at 2, 3-6, 9). The October 2015 Ruling further construed plaintiff's Motion <u>In Limine</u> to Limit Trial to Statutory Damages or for Other Relief as a Motion for Reconsideration in light of new evidence and ordered supplemental briefing. (<u>Id.</u> at 2, 6-9). Defendant Peluso Law Offices filed its supplemental brief in opposition on November 6, 2015 (Dkt. #83[2]; <u>see also</u> Dkts ##81-82);

---

[1] The two page July 2012 Letter is found as Exh. 1 to Dkt. #73.

[2] As before, defendant Peluso Law Offices' six-page brief did not address any of the substantive legal issues under the FDCPA but merely recited its prior arguments that this was a commercial, and not a consumer, transaction.

2

plaintiff filed his reply brief three days later. (Dkt. #84).[3]

For the reasons stated below, plaintiff's Second Motion <u>In Limine</u> construed as a Motion for Reconsideration (Dkt. #73) is <u>granted in large part such that the Court finds that the underlying loan improvement loan was not commercial in nature but rather a consumer debt, and further finds that the July 2012 letter  violated the FDCPA, thereby entitling plaintiff to judgment in his favor in the amount of $1,000 statutory damages, with further court proceedings restricted to determining the amount of fees and costs due to plaintiff</u>.

## I.  DISCUSSION

As observed in the October 2015 Ruling (at 6-8), insofar as the parties' summary judgment briefs, and particularly those of defendant Peluso Law Offices (<u>see</u> Dkts. ##41, 48), focused solely upon the issue of whether the loan at issue was a consumer loan in nature, the March 2014 Ruling addressed none of the two other elements of plaintiff's claim, other than to identify them.  (At 6).  As summarized in the October 2015 Ruling, in his second motion, plaintiff argued that after discovery was closed in this federal lawsuit and while the Cross-Motions for Summary Judgment were pending, plaintiff was deposed on December 6, 2013 in a related state matter, the testimony from which "mak[es] it indisputable that the home improvement loan was on [plaintiff's] own residence[,]" so that this judicial officer should reconsider the March 2014 Ruling in light of the new evidence and/or to correct a "clear error" in the prior ruling.  (<u>Id.</u> at 6-7)(internal citations omitted). Again, as previously indicated, the October 2015 Ruling construed plaintiff's motion as a Motion for Reconsideration in light of new evidence, and ordered supplemental briefs on the underlying legal issues.  (<u>Id.</u> at 7-9).

A party is entitled to judgment as a matter of law when the party demonstrates, through citations to pleadings, depositions, answers to interrogatories, admissions on file,

---

[3]Plaintiff's reply brief observed that defendant's brief "has not countered [plaintiff's] position that the collection letter was egregiously unlawful."

and affidavits, if any, that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "The burden is on the moving party 'to demonstrate the absence of any material factual issue genuinely in dispute.'" Am. Int'l Group, Inc. v. London Am. Int'l Corp., 644 F.2d 348, 351 (2d Cir. 1981), quoting Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1319–20 (2d Cir. 1975). A court must view all inferences and ambiguities in the light most favorable to the nonmoving party and "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." See Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.)(citation omitted), cert. denied, 502 U.S. 849 (1991).

### A.  WHETHER LOAN IN QUESTION IS CONSUMER IN NATURE

In light of the new evidence, the Court finds no genuine issue of material fact with respect to the consumer nature of the loan.   As Judge Covello observed in the March 2014 Ruling, the FDCPA defines "debt" as "any obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes." (At 7, citing Goldman v. Cohen, 445 F.3d 152, 154, n.1 (2d Cir. 2006), citing 15 U.S.C. § 1692a(5)). Judge Covello continued: "The FDCPA [only] regulates 'debt collection tactics employed against personal borrowers on the theory that they are likely to be unsophisticated about debt collection and thus prey to unscrupulous collection methods.'" (Id. at 7-8, citing, inter alia, Miller v. McCalla, Raymer, Patrick, Cobb, Nichols, & Clark, L.L.C., 214 F.3d 872, 875 (7th Cir. 2000)(other citations omitted)(emphasis in original)(Posner, C.J.)). Judge Covello further held that debt collection practices related to commercial debts, alternatively, are not subject to FDCPA regulation.   (Id. at 8, citing, inter alia, Goldman, 445 F.3d at 154, n.1 (additional citations omitted)).

The question of whether a debt is commercial or consumer in nature is settled at the moment of its inception. Miller, 214 F.3d at 874-75 (agreeing with the plaintiff that "the

relevant time for determining the nature of the debt is when the debt first arises[.]")(citation omitted).  Due to a relative lack of evidence at the time, Judge Covello found that a genuine issue of material fact existed with respect to the nature of the loan.  (March 2014 Ruling at 10). The record before Judge Covello indicated the following facts: plaintiff had taken out a home improvement loan from Key Bank, N.A., for $25,555.50 in 2005 to replace "rotting asphalt siding with new vinyl siding[;]" the loan listed Pape's current address as 27 Alden Street,[4] Enfield, CT, which he had purchased and begun to use as his home in July 2004; both before and after taking out the loan, Pape was in the business of purchasing investment properties from which he received rental income; and finally, "a week after the loan was executed, Pape declared a home located at 287 Union Street, Springfield, Massachusetts as his 'principal address' in a Massachusetts Declaration of Homestead document."  (At 2-3)(multiple internal citations omitted).

      Plaintiff's deposition in the state court case provides greater detail into his residency during this time period, which confirms the consumer nature of the loan in light of the rule provided in Miller.  Plaintiff testified that he purchased the Alden Avenue property in May 2004 and was living there when he took out the loan in July 2005.  (Plaintiff's Depo. Tr. at 27, 35–36).  Plaintiff further testified that he and his wife had planned to move in together at that location, but she then refused to live in that location, so he planned to sell the property and move.  (Id. at 28, 66).  Plaintiff additionally testified that his purpose for replacing the home's siding, and taking out the loan to finance the project, was to improve the home's marketability upon the advice of a realtor.  (Id.)("If I was going to have decent value selling it, I had to replace the siding.").  (See also id. at 25-28, 34-35).  Plaintiff acknowledged that at some point in 2004 he began renting the unoccupied portion of the property, which was a duplex.  (Id. at 28–30).  Plaintiff swore that he did not have a lawyer

---

[4] Judge Covello noted the erroneous reference to "Alden Street" in the address, and presumed the loan referred to the Alden Avenue property in question. (At 2, n.1).

5

review the loan documents and that he did not read all of the documents himself. (Id. at 31, 33). Plaintiff admitted that about a week after taking out the home improvement loan with Key Bank, he signed a Massachusetts Declaration of Homestead document, in which he identified his residence as 387 Union Street, Springfield, MA. (Id. at 38-39; see also id. at 36-37). Plaintiff explained that he actually lived in the Alden Avenue property at that time and continued to live there until October 2005. (Tr. at 39). Plaintiff testified that the Massachusetts Declaration of Homestead was merely one in a series of documents he signed without reviewing in detail in order to close his purchase of the Union Street property, which he described as an "investment property" in which he never lived. (Id. at 39-41)("There were hundreds of things I had to sign and it was just another document.").

What was murky at the time of the Cross-Motions for Summary Judgment is now clear from plaintiff's deposition testimony in the state court matter — that the home improvement loan plaintiff took out in July 2005 was consumer in nature. When plaintiff took out the loan, it was for the purpose of improving the home in which he resided at that time. While it is true that plaintiff had been in the property investment business before and after taking out the loan, that fact does not change the character of the loan. This additional information satisfies the FDCPA's requirement that consumers "present evidence showing they incurred a debt 'primarily for personal, family, or household purposes.'" 15 U.S.C. § 1692a(5). As stated above, to determine the nature of a loan, the Court must look to its nature at the time of its inception. Miller, 214 F.3d at 874-75. Here, plaintiff took out the loan for a typical consumer purpose — to increase his home's resale value so that he could afford to move elsewhere. The fact that he attempted to sell the home and did move is entirely consistent with the consumer nature of the loan. It is typical for homeowners to attempt to increase the value of their homes prior to putting them on the market. Doing so does not render the loan commercial in nature. As Judge Covello observed in the March 2014 Ruling, it is immaterial that plaintiff received income from his real estate investments

around this time — "[r]eal estate investors are entitled to personal homes, and if the loan is a consumer loan in nature, the plaintiff may be entitled to relief." (At 10).

Plaintiff's status as a consumer with respect to this loan is reinforced by his failure to review the loan documents himself or through an attorney and his apparent ignorance of the Massachusetts Declaration of Homestead document he signed shortly thereafter. As plaintiff testified, he was unaware of the import of this document when he signed the declaration — "I was brand new at [purchasing real estate]. I had no idea. I signed what they said I needed to sign." (Plaintiff's Depo. Tr. at 40). The fact that plaintiff did not review the loan agreement or have an attorney do so (id. at 31) demonstrates plaintiff status as precisely the "unsophisticated" consumer which the FDCPA seeks to protect from "unscrupulous collection methods." Miller, 214 F.3d at 875.[5]

In light of the plaintiff's deposition testimony, the Court finds the loan was a consumer loan within the purview of the FDCPA.

### B. WHETHER DEFENDANT PELUSO LAW OFFICES' LETTER TO PLAINTIFF VIOLATED FDCPA

Because this loan was consumer in nature, the FDCPA regulates the practices a debt collector may employ in its collection efforts. To prevail on a claim that a debt collector violated the FDCPA, plaintiff need only prove one violation. Bentley v. Great Lakes Collection Bureau, 6 F.3d 60, 62 (2d Cir. 1993). Plaintiff need not prove that he was actually confused by the communication received, as "it is sufficient for a plaintiff to show merely that the least sophisticated consumer would be confused." Jacobson v. Healthcare Fin. Servs., Inc., 516 F.3d 85, 91 (2d Cir. 2008). This objective standard is meant to empower sophisticated consumers to act as "private attorneys general to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to

---

[5]The Court acknowledges, however, that plaintiff is extremely well educated, having majored in Computer and Systems Engineering at college and having obtained a Ph.D in Organization and Management. (Plaintiff's Depo. Tr. at 15-16). He is employed as a software engineer. (Id. at 18-21).

benefit from the deterrent effect of civil actions brought by others." Id. (internal quotation marks omitted).

Plaintiff alleges several violations of the FDCPA in defendant's July 2012 Letter regarding the 2005 home improvement loan.  (Dkt. #73, Brief at 5-11).

### 1. LETTER'S REQUEST FOR PAYMENT WITHIN SEVEN DAYS DID NOT VIOLATE FDCPA

Plaintiff alleges that defendant's request for payment of the debt within seven days violated the FDCPA's provision of a thirty-day period in which a debtor may dispute the debt under the Second Circuit's decision in Savino v. Computer Credit, Inc., 164 F.3d 81 (2d Cir. 1998).  (Dkt. #73, Brief at 6-7). There are two important distinctions between Savino and the instant case which undercut this argument.

First, in the first paragraph of the July 2012 Letter, defendant Peluso Law Offices' letter "request[ed] payment in full within [seven]  days" (Dkt. #73, Exh. 1), whereas in the letter at issue in Savino, the creditor "insist[ed] on immediate payment[.]"  164 F.3d at 84. To request and to insist are different actions with different implications. To insist implies, as described in Savino, a demand.  Id. at 86.  A demand imparts a mandatory nature on the sought action.  See Demand, BLACK'S LAW DICTIONARY (10th ed. 2014)("to claim as one's due; to require").   The FDCPA violation arises from a consumer viewing such a demand as superseding the thirty-day period within which a debtor may dispute the debt.  A request, however, contemplates a voluntary action one is not bound to take. Request, MERRIAM WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 1993)("to ask as a favor or privilege . . . to ask for").  Such "collection activities" are permissible under the FDCPA if they do not overshadow the disclosure of the consumer's right and are not inconsistent with those rights.  Ellis v. Solomon & Solomon, P.C., 599 F. Supp. 2d 298, 302 (D. Conn. 2009), aff'd, 591 F.3d 130 (2d Cir. 2010), citing 15 U.S.C. § 1692g(b); Jacobson, 516 F.3d at 89, n.4 ("Our cases recognize the debt collector's right to demand payment . . . . This right has now been made explicit in the statutory text . . . ."), citing Savino, 164 F.3d at 86.

Second, the request in defendant's letter did not overshadow the FDCPA disclosures and the plaintiff's rights under them. In Savino, the defendant's demand appeared on the front of the letter and the FDCPA disclosures on the reverse side. 164 F.3d at 84. Here, the FDCPA notice appears in the third paragraph on the first page of the letter and begins with transitional phrasing—"[p]lease note[.]" (Dkt. #73, Exh. 1). As the Savino court held, such transitional language referring the addressee to the validation notice would comply with the Act.[6] The appearance of the notice on the first page following the necessary transitional phrasing prevented defendant's request for payment from overshadowing the notice.

### 2. LETTER'S TYPOGRAPHY DID NOT OVERSHADOW MANDATORY NOTICE

Plaintiff next alleges a violation of the FDCPA disclosure requirements by virtue of the letter's typography. (Dkt. #73, Brief at 7). Plaintiff concedes the appropriate disclosures were made, but argues that the italics used made them difficult to read, and that they were overshadowed by the bold, underlined text which followed them. (Id. & Exh. 1). Of the eight paragraphs in the July 2012 Letter, two appear in italics, two appear in bold and underline, and the remaining four are in regular font. (Dkt. #73, Exh. 1). Plaintiff argues that italics make for "deliberately difficult reading[]" and that the subsequent bold, underlined text, despite appearing in the same size font as the rest of the letter, is "the typographical equivalent to pounding the table or shouting." (Id., Brief at 7).

In support of this argument, plaintiff relies upon Colmon v. Payco-G.A.C., Inc., No. 3:89 CV 217 (PCD), 1992 U.S. Dist. LEXIS 22733, at *2 (D. Conn. Jan. 23, 1992), a decision in which the late Senior U.S. District Judge Peter C. Dorsey looked not only to the language of the letter for potential FDCPA violations but also to "the format, type size, background and print color[]" to determine if the "presentation of the notice undercut[] and overshadow[ed]

---

[6]Conversely, as the Second Circuit explained in that case, while a "request for immediate payment [does] not, standing alone, violate the FDCPA[,]" the "decision to ask for immediate payment without also explaining that its demand did not override the consumer's rights under Section 1962g to seek validation of the debt[]" constitutes a violation of the Act. Savino, 164 F.3d at 86.

a provision required to be contained in the notice." Id. at *2, 3.  In Colmon, the letter was printed in white text on red paper; across the width of the top of the page appeared the words "DEMAND FOR PAYMENT" in more than half-inch print followed by "NOW" in two-inch print.  Id. at *5. Toward the bottom of the front page, in the smallest font used on that side, appeared a reference to the required notice, which was printed on the reverse side in the same white-on-red combination.  Id. at *4–5.  Despite use of the proper language, Judge Dorsey found the presentation "to be so likely to overwhelm the least sophisticated creditor to whom it was directed as to vitiate the validation notice[.]"  Id. at 5.

The letter in this case is hardly comparable. First, the FDCPA notice appears on the front page of the letter.  Second, it is the only paragraph on that page appearing in italics and so draws the reader's attention more than it diminishes its readability. Third, the bold, underlined paragraphs only appear on the second page.  Finally, those bold, underlined portions are otherwise in the same type size as the rest of the letter, including the notice. Taken together, nothing about the typography used in this letter supports a reasonable inference that the notice was overshadowed or undercut by the use of the most common and unobtrusive typographical devices available for emphasizing certain portions of text — italics, bold, and underline.

### 3. LETTER'S STATEMENT OF THE BALANCE OWED DID NOT COMPLY WITH FDCPA

Plaintiff additionally argues that defendant misstated the debt amount by failing to provide the rate of interest accruing on the debt. (Dkt. #73, Brief at 8-9). The interpretation of 15 U.S.C. § 1692g(a)(1)'s duty to start the amount of the outstanding debt was addressed extensively in Miller by then-Chief Judge Richard Posner of the Seventh Circuit, in which case the letter at issue mentioned the "unpaid principal balance" but then added that "this amount does not include accrued but unpaid interest, unpaid late charges, escrow advances or other charges . . . . The amount to reinstate or pay off your loan changes daily." 214 F.3d at 875 (emphasis omitted).  Included in that letter was a notice to contact an 800 telephone number

for "complete reinstatement and payoff figures." Id. Chief Judge Posner held that this statement was in violation of the Act because "[t]he unpaid principal balance is not the debt; it is only part of the debt; the Act requires statement of the debt[,]" which was not satisfied by directing a consumer to a toll free telephone number, "often a vexing and protracted undertaking[.]" Id. Instead, Chief Judge Posner held that the statute requires a statement of "the total amount due – interest and other charges as well as principal – on the date the dunning letter was sent." Id. at 875-76. Consistent with a previous decision, the Seventh Circuit created a "safe harbor" formula for compiling with the "amount of debt" provision as follows:

> As of the date of this letter, you owe $\_\_\_$ [the exact amount due]. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write the undersigned or call 1–800–[phone number].

Id. at 876; see also Bartlett v. Heibl, 128 F.3d 497, 501-02 (7th Cir. 1997)(additional citation omitted). The Seventh Circuit then advised:

> A debt collector who uses this form will not violate the "amount of the debt" provision, provided, of course, that the information he furnishes is accurate and he does not obscure it by adding confusing other information (or misinformation). Of course we do not hold that a debt collector must use this form of words to avoid violating the statute; but if he does, and (to repeat an essential qualification) does not add other words that confuse the message, he will as a matter of law have discharged his duty to state clearly the amount due. No reasonable person could conclude that the statement that we have drafted does not inform the debtor of the amount due.

214 F.3d at 876 (multiple citations omitted)(emphasis in original).

Both parties have cited Jones v. Midland Funding, LLC, 755 F. Supp. 2d 393 (D. Conn. 2010), adhered to on reconsideration, No. 3:08-CV-802 RNC, 2012 WL 1204716 (D. Conn. Apr. 11, 2012), in which U.S. District Judge Robert N. Chatigny, after reviewing the conflicting case law on point, id. at 397, held: "I agree with the Miller line of cases that when a debt is accruing interest, a validation notice fails to correctly state the amount of the

debt as required by § 1692g unless it discloses the fact that interest is accruing and informs the consumer of the applicable interest rate." Id. (multiple citations & footnote omitted).[7]

Relying upon the "safe harbor" in Miller, Judge Chatigny noted: "It seems clear that a validation notice would satisfy § 1692g if it used the following language: 'As of today, [date], you owe $____. The amount consists of a principal of $____, accrued interest of $_____, and fees of $___. This balance will continue to accrue interest after [date] at a rate of $___ per [day/week/month/year].'" Id. at 397, n.7.

Similarly, in Hecht v. Green Tree Servicing, LLC, 12 CV 498 (JBA), 2013 WL 164514, at *2-4 (D. Conn. Jan. 15, 2013), U.S. District Judge Janet Bond Arterton denied the defendant-creditor's Motion to Dismiss where defendant's notice letter

> did not use a verbatim recitation of the Miller safe harbor provision[, but] . . . [i]nstead conveyed only the specific debt amount owed two months before the letter was sent without calculating the amount owed as a result of two months' additional interest, notwithstanding Miller's observation that the defendant "certainly" could "state the total amount due – interest and other charges as well as principal – on the date the dunning letter was sent. We think the statute required this."

At *2, quoting Miller, 214 F.3d at 875-76.

Like the defective letters in Miller, Jones and Hecht, the first sentence of the July 2012 Letter refers merely to "an unpaid balance of $35,048.63 originally owed as guarantor to Key Bank, N.A.[,]" without identifying if that was the original principal due, or whether that figure constitutes the original principal plus interest to date. (Dkt. #73, Exh. 1). While the letter at issue does contain some of the same language as the "safe harbor," notably missing is the amount of the principal, the amount of accrued interest, and the amount of

---

[7]Earlier this year, a district judge in the Eastern District of New York rejected the Miller and Jones holdings, observing that "[t]here is a division of authority as to whether a debt collector must disclose that the amount of the debt will increase over time due to interest or fees." Avila v. Riexinger & Associates, LLC, No. 13 CV 4349 (RJD)(LB), 2015 WL 1731542, at *6 (E.D.N.Y. Apr. 14, 2015).

fees owed, so that defendant has failed to convey the mandatory § 1692 notice accurately.[8]

### 4. THREATENING OR INTIMIDATING LANGUAGE

#### a.  LANGUAGE RELATED TO LITIGATION

Finally, plaintiff contends that defendant's mention of the consequences of a judgment against plaintiff violates the FDCPA's proscription against threatening language. (Dkt. #73, Brief at 9-11).   The third and fourth paragraphs on page two of the July 2012 Letter read in full:

> **Please keep in mind that if litigation against the debtor proceeds to judgment in the creditor's favor, under Connecticut law the creditor has certain methods at its disposal to obtain actual payment in satisfaction of the judgment rendered.  For example, the creditor can question a judgment debtor under oath about available assets.  Further, liens can be placed on any real property owned by the judgment debtor.**
>
> **The creditor can also request the court to order the judgment debtor to make installment payments to satisfy the judgment. If payments are then not made in accordance with the court order, an execution can be issued against the judgment debtor's wages, personal property, or bank accounts so that the creditor can satisfy the debt out of the judg[]ment debtor's wages, bank accounts, or non-exempt personal property.  Under Connecticut law, some property is exempted from execution by statute.**

(emphasis in original).

Plaintiff has cited Rosa v. Gaynor, 784 F. Supp. 1 (D. Conn. 1989) in support of his argument that this language amounted to bullying, but there are significant distinctions between Rosa and this case.  First, the letter warning of judgment penalties in Rosa came — indirectly, as it were — from an Ohio attorney who was not capable of initiating the threatened lawsuit in Connecticut or of initiating the lawsuit against a Connecticut resident in Ohio.  Id. at *4.   Then-U.S. District Judge José A. Cabranes found this to violate the FDCPA's proscription against threats to take legal action one cannot or does not intend to take.  Id.  Here, the July 2012 Letter, which mentions the availability of legal recourse for the

---

[8]In light of this conclusion, there is no need to address plaintiff's contention that the amount of the debt itself was inaccurate.  (Dkt. #73, Brief at 9).

13

creditor, came from an attorney who was qualified to initiate a lawsuit in Connecticut, that is, defendant Peluso Law Offices.  As there is no reason to believe defendant did not intend to initiate this lawsuit, there is no violation under Rosa in this respect.   Id.

The Rosa holding does go further, however, as plaintiff points out.  The letter at issue in Rosa contained the following pertinent language:

> [if you do not dispute this debt within thirty days,] we may be forced to proceed with a lawsuit. After judgment, any remedy may be filed against you that is available to attorneys in your area. This may include garnishment, levy on real or personal property, or calling you into court for a debtor's examination. This is your final letter.

Id.  Judge Cabranes found the "list of possible remedies" both "particularly intimidating and particularly extraneous for any purpose other than bullying plaintiff." Id. at *5 (citation omitted).  He continued: "Faced with such a list of dire consequences, an unsophisticated debtor cannot help but feel unduly threatened." Id.  The letter at issue here, like the letter in Rosa, also itemized the possible consequences of a judgment.  However, considering "the clear import of the language [relating to the possibility of a lawsuit], taken as a whole," id. at *5 (citation omitted), the letter in this case does not rise to the level of "intimidat[ion]" or "bullying[]" articulated in the letter in Rosa.  In Rosa, the letter referred to litigation as all but inevitable — "we may be forced to proceed with a lawsuit . . . . This is your final letter" — whereas the letter in this case frames its discussion of judgment penalties in a manner closer to full disclosure of what the defendant's client, Amos, may or may not do: "**[p]lease keep in mind that if litigation against the debtor proceeds to judgment in the creditor's favor, under Connecticut law the creditor has certain methods at its disposal to obtain actual payment in satisfaction of the judgment rendered.**" (Dkt. #73, Exh. 1)(emphasis in original).  This court finds the latter approach in accordance with the FDCPA.

This case is also distinct from Nolan v. Credit Mgmt. Corp., No. 3:06 CV 318 (WIG), 2007 WL 4460310, at *3 (D. Conn. Dec. 14, 2007), where the defendant-creditor sent a

letter to the plaintiff-debtor warning that if plaintiff failed to return a post-judgment exemption claim form within thirty days, defendant "can get an order of compliance from the court, bring [plaintiff] into Court for examination, and if necessary, have a Marshal bring [plaintiff] to court if [plaintiff] fail[ed] to appear." U.S. Magistrate Judge William I. Garfinkel found this letter violated FDCPA's proscription against "threat[s] to take any action that cannot legally be taken or that is not intended to be taken," 15 U.S.C. § 1692(e)(5), because "[w]hen the letter is read in its entirety, the Court finds that an unsophisticated debtor could reasonably interpret it to mean that being brought into court by a Marshal was far more imminent than State procedures allow." Id. at *6. Here, the unpleasant consequences of which defendant warns in the letter are described as coming after both a decision to proceed with a lawsuit and obtaining a judgment against the defendant.

The July 2012 Letter is much closer to the collection letter at issue in Sorel v. Capital One Serv., LLC, No. 3:11 CV 703 (SRU), 2012 WL 3596487, at *2, 6-9 (D. Conn. Aug. 20, 2012), which warned the plaintiff-debtor as follows:

> At this point in time, your account has been pre-qualified by Capital One as lawsuit eligible.  If we do not hear from you regarding this important business matter, your account may be subject to litigation.  If this were to occur, your account may incur additional fees and penalties if allowed under the state law of your jurisdiction.

Id. at *2.  In that case, U.S. District Judge Stefan R. Underhill granted defendant's Motion for Summary Judgment, id. at *6-9, holding that "even where communications specifically refer to legal action, a threat does not exist where the references are couched in terms of mere possibility." Id. at *6, quoting Gervais v. Ridde & Assoc., P.C., 479 F. Supp. 2d 270, 274 (D. Conn. 2007); see also Madonna v. Acad. Collection Serv., Inc., 95 CV 875 (AVC), 1997 WL 530101, at *1-2 (D. Conn. Aug. 12, 1997).  Judge Underhill similarly distinguished his case from Rosa, in that in Sorel, there was "[n]othing about the . . . letter [that] suggested, even to the least sophisticated [consumer], that its author was a member of the Connecticut bar, empowered to file suit at any moment." Id. at *7.  Accordingly, the realistic

15

explanation of the possible consequences of continued non-compliance with collection efforts, as explained in the July 2012 Letter, without a showing that defendant never intended to engage in litigation, does not violate FDCPA.

### b. LANGUAGE RELATED TO REPORTING TO CREDIT AGENCIES AND THE IRS

The second paragraph on page two of the July 2012 Letter contains the following language: "Our client may report information about your account to credit bureaus.  Late payments, missed payments, or other defaults on your account may be reflected in your credit report.  We may also report this to the IRS as Debt Cancellation Income pursuant to IRS Reg. § 1.61-12 if payment is not received."  (Dkt. #73, Exh. 1).  Defendant did not intend to report, nor could defendant report, plaintiff's non-payment to credit bureaus or to the IRS.  (Dkt. #73, Brief at 9-10).  In fact, defendant admits that it could not report the cancellation of plaintiff's debt to the IRS (Dkt. #48-2, Local Rule 56(a)1 Statement, ¶ 8), and that Amos does not report its accounts to credit bureaus.  (Id., ¶ 10).[9] As discussed above, the FDCPA, 15 U.S.C. § 1692e, provides that "[a] debt collector may not use any false, deceptive, or misleading representation . . . with the collection of any debt."  Section 1692(e)(5) provides that "the threat to take any action that cannot legally be taken or that is not intended to be taken[]" constitutes a violation of this section.  Nolan, 2007 WL 4460310, at *5, citing Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir. 1993).  See also Bentley, 6 F.3d at 62.   Thus, under these circumstances, defendant has violated the FDCPA.

---

[9]In light of defendant's admission, there is no need to juxtapose the tentative language used here ("We may also report this to the IRS as Debt Cancellation Income pursuant to IRS Reg. § 1.61-12 if payment is not received.") with the mandatory language found in Wideman v. Monterey Fin. Servs., Inc., Civ. No. 08-1331, 2009 WL 1292830, at *3 (W.D. Pa. May 7, 2009)("Please be advised that we have not filed a 1099 C form with the IRS concerning this debt as of yet.") and in Wagner v. Client Servs., Inc., Civ. No. 08-5546, 2009 WL 839073, at *3-4 (E.D. Pa. Mar. 26, 2009)(advising that if plaintiff accepted defendant's settlement offer and the amount of write-off is equal to or exceeds $600, then "our client is required by the Internal Revnue Code, section 6050P, to report this amount and issue a form 1099-C."), both cited by plaintiff.  (Dkt. #73, Brief at 10).

II.  CONCLUSION

For the reasons stated above, plaintiff's Second Motion <u>In Limine</u> (Dkt. #73), construed as a Motion for Reconsideration in light of new evidence, <u>is granted in large part such that the Court finds that the underlying loan improvement loan was not commercial in nature but rather a consumer debt, and further finds that the July 2012 Letter violated the FDCPA, thereby entitling plaintiff to judgment in his favor in the amount of $1,000 statutory damages</u>.  15 U.S.C. § 1692k(a)(1)-(3). Upon a finding of liability, a court may award an individual plaintiff actual damages in compensation for harm suffered as a result of the violation, "additional damages" not to exceed $1,000, and reasonable attorney's fees.  See <u>Clomon</u>, 988 F.3d at 1322.  "The FDCPA is a strict liability statute, and the degree of a defendant's culpability may only be considered in computing damages."  <u>Bentley</u>, 6 F.3d at 63.  In light of the several violations of the FDCPA found in defendant's July 2012 Letter, statutory damages are awarded in the amount of $1,000.

The only remaining issue is the amount of fees and costs to be determined by the Court.  Accordingly, plaintiff shall submit his Motion for Attorney's Fees, brief, affidavit, and exhibits in support **on or before January 29, 2016**, defendant shall file its brief in opposition **on or before February 19, 2016**, and plaintiff may file a reply brief, if any, **on or before March 4, 2016**.

<u>Dated at New Haven, Connecticut, this 5th day of January, 2016.</u>

       /s/ Joan G. Margolis, USMJ
    Joan Glazer Margolis
    United States Magistrate Judge